THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| GLOBAL CAPACITY HOLDCO, LLC, | § | Case No. 10-12302 (PJW) |
| et al.[1] | § | (Jointly Administered) |
| | § | |
| Debtors. | § | **Hearing Date: August 24, 2010 at 9:30 a.m.** |
| | § | **Objection Deadline: August 17, 2010 at 4:00 p.m.** |

**APPLICATION OF DEBTORS FOR ENTRY OF AN
ORDER, *NUNC PRO TUNC* TO THE PETITION DATE, AUTHORIZING
EMPLOYMENT AND RETENTION OF
CAPSTONE INVESTMENTS AS FINANCIAL ADVISOR
FOR DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a)**

Global Capacity Holdco, LLC, Global Capacity Group, Inc., 20/20 Technologies, Inc., Capital Growth Systems, Inc. d/b/a Global Capacity, CentrePath, Inc., Global Capacity Direct, LLC f/k/a Vanco Direct USA, LLC, FNS 2007, Inc. (f/k/a Frontrunner Network Systems, Corp.), NexVu Technologies, LLC, Capital Growth Acquisition, Inc., and 20/20 Technologies I, LLC, the above debtors and debtors in possession (collectively, the "Debtors" or the "Company"), by and through their undersigned attorneys, who hereby submit this Application (the "Application") for entry of an order, *nunc pro tunc* to the Petition Date, authorizing the Debtors' retention of Capstone Investments ("Capstone"), as the Debtors' financial advisor and

---

[1] The Debtors in these cases, along with their case numbers, addresses, and the last four digits of each Debtor's federal tax identification number, are: Global Capacity Holdco, LLC, 200 S. Wacker Drive, Suite 1650, Chicago, IL 60606 (10-12302) (8858); Global Capacity Group, Inc., 730 North Post Oak Road, Houston, TX 77024 (10-12303) (0073); 20/20 Technologies, Inc., 200 South Wacker, Suite 1650, Chicago, IL 60606 (10-12304) (5612); Centrepath, Inc., 275 Winter Street, Waltham, MA 02451 (10-12305 (9034); Capital Growth Systems, Inc., 200 South Wacker Drive, Suite 1650, Chicago, IL 60606 (10-12306) (3505); Global Capacity Direct, LLC (f/k/a Vanco Direct USA, LLC), 200 South Wacker Drive, Suite 1650, Chicago, IL 60606 (10-12307) (1970); FNS 2007, Inc. (fka Frontrunner Network Systems, Corp.), 200 South Wacker Drive, Suite 1650, Chicago, IL 60606 (10-12308) (7892); Nexvu Technologies, LLC, 200 South Wacker Drive, Suite 1650, Chicago, IL 60606 (10-12309) (4626); Capital Growth Acquisition, Inc., 200 South Wacker Drive, Suite 1650, Chicago, IL 60606 (10-12311) (4116); and 20/20 Technologies I, LLC, 200 South Wacker Drive, Suite 1650, Chicago, IL 60606 (10-12310) (5514).

{00306090-2}

investment banker pursuant to section 327(a) and 328(a) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). In support of this Application, the Debtors rely upon the affidavit and declaration of Jason Diamond (the "Capstone Affidavit"), a copy of which is attached hereto as Exhibit A; and the affidavit and declaration of Mark Rubin, on behalf of Rubin Capital Corp, ("RCC") as an independent contractor with Capstone (the "RCC Affidavit"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein, and respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 327(a), 328(a), 503(b), 504 and 507 of the Bankruptcy Code, Bankruptcy Rules 2014, 2016 and 5002 and Local Rule 2014-1.

## BACKGROUND

3. A detailed discussion of the factual background and circumstances surrounding the Debtors' commencement of these chapter 11 cases can be found in the Debtors' *Motion for Joint Administration of Cases* (Docket No. 3) ("Joint Administration Motion") and the *Affidavit in Support of Certain First Day Filings by George King* (Docket No. 2) are

incorporated herein by reference. Each capitalized term used, but not otherwise defined herein, shall have the meaning ascribed thereto in the Joint Administration Motion.

## RELIEF REQUESTED

4. By this Application, the Debtors seek authority from this Court to employ and retain Capstone as of the Petition Date to represent the Debtors as their financial advisor and investment banker. Specifically, the Debtors respectfully request entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rule 2014-1 authorizing Capstone to perform the services that will be necessary during these chapter 11 cases, as more fully described below and in the parties' engagement letter, attached hereto as Exhibit C (the "Engagement Letter").

## SERVICES TO BE PROVIDED

5. As stated in the Engagement Letter, Capstone will provide personnel that are either employees or independent consultants to Capstone. It is anticipated that Mr. Mark Rubin and RCC, will be on the Capstone engagement team. The services contemplated by Capstone include the following:

   a. assist the Company in analyzing and evaluating the assets, business, operations, and financial position of the Company;

   b. assist the Company in the preparation of any documentation relating to the proposed restructuring of the Company for distribution and presentation to prospective purchasers, investors, creditors, or courts;

   c. assist the Company in the preparation and implementation of a plan of reorganization with respect to the proposed Restructuring of the Company;

   d. assist the Company, in the event a disposition of assets is part of the restructuring process, in the preparation and implementation of a marketing plan with respect to such disposition of assets;

   e. assist the Company in the screening of interested prospective investors and/or purchasers;

  f. assist the Company in coordinating the materials as well as the information to be made available to prospective investors and/or purchasers and the prospective investors and/or purchasers' due diligence investigations;

  g. assist the Company in evaluating proposals which are received from prospective investors and/or purchasers;

  h. counsel the Company as to strategy and tactics for negotiating with prospective investors and/or purchasers and, if requested by the Company, participate in negotiations relating to the proposed Restructuring;

  i. meet with and update the Company's Board of Directors or the Special Committee of the Board of Directors as they may reasonably require and request;

  j. advise the Company with respect to the form and structure of, and consideration to be received in, the proposed Restructuring; and,

  k. assist the Company and Company's counsel to the extent required for any court hearings or filings.

6. Pursuant to the terms of the Engagement Letter, and subject to the Court's approval of this Application, the Capstone engagement shall commence on the date of the Engagement Letter and shall expire on June 30, 2011, unless extended by mutual written agreement and approval of this Court. The engagement may be terminated at any time upon 30 days' written notice from either party.

## **FEE STRUCTURE AND COMPENSATION**

7. On July 6, 2010, Capstone received $150,000.00 payment from the Debtors. This payment covered pre-petition expenses for the time period of July 2 until the filing for a cost of 75% of the funds, or $112,500.00. The remaining $37,500.00 is a retainer for post-petition services to be held through the conclusion of these proceedings.

8. Pursuant to the terms of the Engagement Letter, Capstone seeks the following compensation for its services rendered hereunder:

  a. a non-refundable retainer fee of $150,000 that was paid on July 6, 2010; (see above for description) additionally, on the first banking day of the first four months of this

Agreement, the Company shall pay Capstone additional retainer fees equal to $100,000 per month, and, beginning on the fifth month of this Agreement and for each month thereafter until such time as this Agreement is either terminated or all of the Assets are sold, the Company shall pay Capstone additional retainer fees equal $50,000 per month. (collectively the "Financial Advisory Fee").

    b. If a Restructuring as defined in the Engagement Letter is consummated:

        i. during the term of Capstone's engagement under this letter; or

        ii. during the 12 months following termination or expiration of Capstone's engagement; or

        iii. as a result of or as contemplated by a letter of intent, an agreement in principle or definitive agreement to effect a Restructuring which is entered into during the term of Capstone's engagement or the 12 months following termination or expiration of Capstone's engagement;

        iv. then the Company shall pay Capstone in cash on the Transaction Date, a transaction fee (the "Transaction Fee") in accordance with Schedule A attached to the Engagement Letter which anticipates a 6% fee on any consideration received from existing debenture holders, whether as part of the DIP financing, an asset sale, or restructuring, will not result in a Transaction Fee. In no event, however, shall the Transaction Fee payable to Capstone for any Restructuring transaction that does not result in the existing debenture holders owning or otherwise obtaining a controlling interest in the assets of the Company (excluding any retainers, monthly advisory fees and any Transaction Fee paid or payable to Capstone for DIP Financing) be less than $450,000 if a Restructuring is consummated.

9. Capstone's compensation structure is comparable to those rates charged by financial advisors and investment bankers of similar experience and expertise for engagements of scope and complexity similar to these chapter 11 cases and are, accordingly reasonable.

10. In addition to the fees payable, Capstone is seeking the reimbursement of reasonable out-of-pocket expenses. Out-of-pocket expenses may include, but are not limited to, transportation, lodging, meals, document services, data base services, facsimile charges, courier charges, word processing requirements and fees and expenses of third parties such as

legal counsel. Reimbursement of the expenses incurred is subject to application for and allowance by this Court.

11. Capstone has agreed to pay RCC compensation at a rate equal to 25% of the fees it earns pursuant to its approved Application. The compensation payable to RCC will be paid from the fees earned by Capstone and thus will not be an incremental expense to the Debtors. RCC will also be reimbursed for its reasonable out of pocket expenses. Additionally, RCC and its employees will be covered under Capstone's indemnification agreement pursuant to the approved Application.

12. Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases, whose fee arrangements are typically not hours-based, Capstone does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. The Debtors therefore request that Capstone be excused from compliance with such requirements.

13. The Debtors seek approval of the Capstone fee structure pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in pertinent part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a), therefore, permits the Court to approve the fee structure, as set forth in the Engagement Letter, for payment in respect of the post-petition services. The proposed fee structure appropriately reflects the nature of the services to be provided by Capstone[2].

---

[2] Fee structures that do not include billing hourly basis have been approved and implemented in other large chapter 11 cases in this District and elsewhere. *See e.g., In re Viasystems Group, Inc.*, Case. No. 02-

14. Notwithstanding the approval of Capstone's fee structure for post-petition services requested herein, all of Capstone's post-petition fees and expenses in these chapter 11 cases will be subject to approval of the Court upon proper application by Capstone in accordance with Bankruptcy Rule 2016, the fee and expense guidelines established by the United States Trustee, any Standing Orders, and any other applicable requirements.

15. Other than as set forth in Paragraph No. 21 of the Capstone Affidavit, Capstone believes that the Debtors do not owe Capstone any amounts for services rendered before the Petition Date.

## INDEMIFICATION AGREEMENT

16. Pursuant to the terms of the indemnity provisions contained in the Engagement Letter, attached as Schedule B thereto, the Debtors have agreed to indemnify and hold harmless Capstone and its affiliates, and the respective officers, directors, employees, agents and representatives of Capstone, its affiliates and each other person, if any, controlling Capstone or any of its affiliates and other outside consultants to include Mark Rubin from and against any losses, claims, damages or liabilities related to this engagement. The Debtors, however, will not be responsible for any losses, claims, damages or liabilities that are finally judicially determined to have resulted from bad faith or gross negligence of any indemnified person.

## CAPSTONE'S ENGAGEMENT AND QUALIFICATIONS

17. Capstone has been and will be employed solely by the Debtors and shall take direction only from the Debtors.

---

14867 (ALG) (Bankr. S.D.N.Y. 2002); *In re Bridge Information Systems, Inc.*, Case No. 01-41593-293 (Bankr. E.D. Mo. 2001); *In re Excaliber Holding Corporation*, Case No. 01-47943-399 (Bankr. E.D. Mo. 2001); *In re Comdisco, Inc.*, Case No. 01-24795 (Bankr. N.D. Ill. 2001); *In re Washington Group International, Inc.* Case No. 01-31627 (Bankr. D. Nev. 2001); *In re Rhythms Netconnections, Inc.*, Case No. 01-14283 (Bankr. S.D.N.Y. 2001); *In re United Artists Theatre Company*, Case No. 00-03514 (Bankr. D. Del. 2000).

18.  Since 2007, Capstone has assisted the Debtors and its Board of Directors with capital raising and other financial advisory matters involving the Debtors.  As a result of Capstone's long-term standing relationship with the Debtors, Capstone has extraordinary knowledge of the complex issues that will have to be addressed and disclosed in these cases.  The retention of Capstone, with its prior knowledge, experience with the Debtors, and extensive relationships with numerous interested potential bidders, will greatly assist in the efficient administration of the estates, and will allow for an efficient process and eliminate unnecessary time and costs necessary to properly educate other advisors on the pending matters, thereby minimizing the overall expense to the estates.

19.  The Debtors believe that both the interruption and duplicative cost involved in obtaining other financial advisors who are unfamiliar with their corporate structure and requirements at this juncture would be extremely harmful to the Debtors and their estates.  If the Debtors are required to retain a party other than Capstone, the Debtors, the estates, and all parties-in-interest would be unduly prejudiced by the time and expense necessary to replicate Capstone's ready familiarity with the pending matters.

20.  RCC's President, Mark Rubin, has over 22 years experience advising companies and institutional investors on complex in- and out-of court restructurings, recapitalizations and corporate finance engagements.  Over the course of his career, he has served as an advisor in various capacities on more than 30 restructuring or sales transactions, including ILX Resorts, Delphi Automotive, Mississippi Chemical, American Pad & Paper, Sunterra Resorts, Atlantic Express, Borden Chemicals & Plastics, Stone & Webster and Drexel Burnham Lambert.

**BASIS FOR RELIEF**

21. The Debtors selected Capstone to act as financial advisor and an investment banker in these cases because of (a) Capstone's years of experience with the Debtors and (b) Capstone's familiarity with the Company, its assets, and its creditors as a result of prior services to the Debtors. In addition, Capstone has extensive relationships with third parties who have privately expressed interest in bidding for the Company's assets. The Debtors therefore believe that Capstone is best qualified to provide timely financial advice to the Debtors in these chapter 11 cases and request that the Court approve such retention.

22. The Debtors seek to retain Capstone and by extension RCC pursuant to section 327(a) of the Bankruptcy Code, which states:

> Except as otherwise proved in this section, the trustee, with the court's approval, may employ one or more … other professional persons, that do not hold or represent an interest adverse to the estate, and are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C.§ 327(a).

23. Notwithstanding the foregoing, based upon the Capstone Affidavit and the RCC Affidavit attached, the Debtors believe that, except as set forth therein, Capstone and RCC do not hold or represent any interest adverse to the Debtors with respect to the matters for which Capstone and RCC will be employed.

24. Based upon the Capstone Affidavit and the RCC Affidavit, the Debtors believe that, other than as set forth therein, Capstone and RCC does not have any connection with the Debtors, the Debtors' directors and executive management, the Debtors' other professionals, the Debtors' equity holders, the Debtors' primary secured creditors, the Debtors' largest unsecured creditors, the Bankruptcy Judges of the United States Bankruptcy Court for the District of Delaware, the United States Trustee and the Assistant Trustees and trial attorneys

for the office of the United States Trustee, except as set forth in the Capstone Affidavit and/or the RCC Affidavit.

25. Capstone anticipates that its allowed fees and expenses will be satisfied from assets of the Debtors' estates, including, without limitation, the Debtors' cash collateral.

26. The Debtors believe that the employment of Capstone as financial advisor would be in the best interests of the Debtors and their estates and desire to employ Capstone effective as of the Petition Date, with compensation to be paid pursuant to the fee structure and approved upon application to this Court.

## NO PRIOR REQUEST

27. No previous application for the relief requested herein as been made to this or any other Court.

**WHEREFORE**, the Debtors respectfully request the entry of an order: (i) authorizing and approving the retention and employment by the Debtors of Capstone Investments as financial advisor and investment banker, as of the Petition Date; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: August 5, 2010

/s/ George A. King
George A. King, President of Capital
Growth Systems, Inc. d/b/a Global
Capacity and its affiliated debtor entities